UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>                              Plaintiff,<br><br>vs.<br><br>MARK D. PAPERMASTER,<br><br>                              Defendant. | 08 CIV 9078<br>Civil Action No.<br><br>**COMPLAINT**<br><br>**JUDGE KARAS** |



FILED OCT 22 2008 S.D. OF N.Y.

International Business Machines Corporation ("IBM" or the "Company"), by and through its undersigned attorneys, upon knowledge with respect to its own information and belief as to other matters, for its complaint avers as follows:

**Nature of the Action**

1. IBM brings this action to prevent Mark D. Papermaster, one of IBM's top executives who is in the possession of significant and highly-confidential IBM trade secrets and know-how, as well as highly sensitive information regarding business strategy and long-term opportunities, from breaching his Noncompetition Agreement with, and confidentiality obligations to, IBM by accepting an executive position at Apple Inc. ("Apple"), a competitor of IBM.

**Parties**

2. IBM is a corporation organized under the laws of the State of New York with its principal place of business located in Armonk, New York, within the Southern District of New York.

3. Upon information and belief, Mr. Papermaster is an individual who resides at 10206 Sausalito Drive, Austin, Texas.

## Jurisdiction and Venue

4. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest, and there is complete diversity of citizenship between the parties.

5. Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because IBM's headquarters and principal place of business are situated within this judicial district, a substantial part of the events giving rise to the claims occurred in this judicial district, and the parties agreed in their Noncompetition Agreement to submit to the exclusive jurisdiction of and venue in the federal and state courts of the State of New York, County of Westchester, for the resolution of all disputes arising under, or relating to, that Agreement.

## Relevant Facts

### IBM

6. IBM is one of the world's largest technology companies. With nearly 400,000 employees working in locations across the world, IBM is a globally-integrated enterprise that operates in various areas of high technology.

7. Like most technology companies, IBM relies upon trade secrets and confidences for much of its business, and each year IBM spends billions of dollars and dedicates extensive research efforts to development of technological innovations.

8. Among other things, IBM utilizes trade secrets and confidential technical know-how to design, develop and manufacture a variety of products, including microprocessors and servers. Microprocessors are a type of microelectronic device that provides intelligence and functionality to electronic devices, such as personal computers, video game consoles, intelligent

handheld devices and servers. Servers are high-performance computers designed to handle the needs of multiple, concurrent users.

**Mark D. Papermaster**

9. Mr. Papermaster has been an employee of IBM for the past 26 years.

10. Since 2006, Mr. Papermaster has been a member of the Company's elite Integration & Values Team ("I&VT"), a group comprising the 300 senior managers of the Company.

11. The I&VT is charged with addressing the most difficult and important issues facing IBM, such as developing corporate strategy and driving innovation and growth, and I&VT members work with the most sensitive strategic information the Company possesses.

12. In his capacity as a member of the I&VT, Mr. Papermaster has gained access to confidential information concerning the Company's strategic plans, marketing plans and long-term business opportunities, including the development status of specific IBM products.

13. Mr. Papermaster has spent much of his career working in IBM's Systems and Technology Group, more specifically developing "Power" architecture, a set of confidential know-how belonging to IBM, and using "Power" architecture to design, develop and manufacture microprocessors and servers based on that technology.

14. Mr. Papermaster is IBM's top expert in "Power" architecture and technology, and he is privy to a whole host of trade secrets and confidences belonging to IBM that the Company uses to design, develop and manufacture its products.

15. Currently, Mr. Papermaster serves as Vice President of IBM's Blade Development unit, which designs and delivers IBM's "blade"-model servers[1] based on technology other than "Power."

16. In his current capacity, Mr. Papermaster has access to confidential know-how and other sensitive information that the Company uses to manufacture its "blade" servers.

17. The confidential information to which Mr. Papermaster has become privy based on his membership in the I&VT and employment with the Company represents the product of IBM's substantial investment in research and innovation and is critical to IBM's competitive success. Such information is carefully guarded and is not made accessible to the public or to IBM's competitors, and is disclosed to IBM employees on a strict "need to know" basis. Such information could not be replicated from public sources.

**The Noncompetition Agreement**

18. On June 21, 2006, Mr. Papermaster executed a Noncompetition Agreement (the "Noncompetition Agreement," a true and correct copy of which is attached hereto as Exhibit A) with the Company.

19. In that agreement, Mr. Papermaster agreed that

> "during [his] employment with IBM and for one (1) year following the termination of [his] employment . . . . [he] will not directly or indirectly within the 'Restricted Area' (i) 'Engage in or Associate with' (a) any 'Business Enterprise' or (b) any significant competitor or major competitor of the Company."

(Noncompetition Agreement § 1(b).)

---

[1] A "blade" is a server of smaller design and dimensions. A "blade" is similar in capability to a personal computer.

20. In the Noncompetition Agreement, "Restricted Area" is defined as "any geographic area in the world for which [Mr. Papermaster] had job responsibilities during the last twelve (12) months of [his] employment with the Company." (*Id.* § 2(d).)

21. In the Noncompetition Agreement, "Engage in or Associate with" is defined to mean, among other things, acting as an "associate, employee, member, consultant, contractor or otherwise." (*Id.* § 2(c).)

22. In the Noncompetition Agreement, "Business Enterprise" is defined as "any entity that engages in . . . competition with the business units or divisions of the Company in which you worked at any time during the two (2) year period prior to the termination of your employment." (*Id.* § 2(a).)

23. Mr. Papermaster also agreed to nonsolicitation covenants, more specifically that

> "during [his] employment with IBM and for one (1) year following the termination of [his] employment . . . . [he] will not directly or indirectly within the 'Restricted Area' . . . solicit, for competitive business purposes, any customer of the Company with which [he was] involved as part of [his] job responsibilities during the last twelve (12) months of [his] employment with the Company."; and

> "for the two (2) year period following the termination of [his] employment . . . [he] will not directly or indirectly within the 'Restricted Area,' hire, solicit or make an offer to any employee of the Company to be employed or perform services outside of the Company."

(*Id.* § 1(b).)

24. Additionally, in the Noncompetition Agreement, Mr. Papermaster made several important acknowledgments. Among others, Mr. Papermaster expressly acknowledged that

> "the business in which IBM and its affiliates . . . are engaged *is* intensely competitive" (*id.* § 1(a));

> "[his] employment by IBM has required, and will continue to require, that [he] have access to, and knowledge of, confidential information of the Company, including, but not limited to, certain or all of the Company's methods, information, systems, plans for acquisition or disposition of products, expansion plans, financial status and plans, customer lists, client data, personnel

-5-

information and trade secrets of the Company, all of which are of vital importance to the success of the Company's business" (*id.*);

"[his] services to the Company are, and will continue to be, extraordinary, special and unique" (*id.*);

"the Company would suffer irreparable harm if [he failed] to comply with [the noncompetition and the nonsolicitation covenants]" (*id.* § 3); and

"the restrictions set forth in [the covenants] are reasonable as to geography, duration and scope" (*id.*).

### Mr. Papermaster's Decision to Join Apple

25. Recently, Mr. Papermaster informed his superiors at IBM that he intended to accept a position at Apple.

26. On information and belief, Mr. Papermaster will become a senior executive and corporate officer at Apple and will work very closely with Apple's Chief Executive Officer in providing to Apple technical and strategic advice on a variety of issues.

27. On information and belief, Mr. Papermaster's position at Apple will require him to have responsibilities for a geographic area for which Mr. Papermaster held responsibilities at IBM in the past 12 months.

28. On information and belief, Apple is a corporation organized under the laws of the State of California, with its principal place of business in Cupertino, California.

29. Apple and IBM are competitors in the design, manufacture and sale of electronic devices, including servers, personal computers and microprocessors.

30. Apple's Xserver line of servers competes with IBM's System x and BladeCenter lines of small servers.

31. Apple and IBM also compete in the sale of personal computers. Although IBM sold its personal computer business to Lenovo in 2005, IBM continues to have an interest in that

business and continues to sell personal computers under an agreement with Lenovo, thereby generating significant revenues.

32. On information and belief, the relationship between Apple and IBM will become even more competitive in the future.

33. In April 2008, Apple acquired P.A. Semi, a semiconductor company located in California.

34. IBM and P.A. Semi have been competitors since at least 2006, when Apple, then a customer of IBM, considered replacing IBM's PowerPC microprocessors, which Apple used to incorporate in its line of personal computers, with microprocessors designed by P.A. Semi.

35. Additionally, P.A. Semi designs microprocessors capable of supporting functionality for video game consoles.

36. Through its PowerPC microprocessor, IBM supplies microprocessors used in video game consoles.

37. On information and belief, Apple intends to expand its presence in the server business through its acquisition of P.A. Semi and its hiring of Mr. Papermaster.

38. On information and belief, through its acquisition of P.A. Semi and its hiring of Mr. Papermaster, Apple intends to design microprocessors for incorporation in a variety of electronic devices, including handheld devices.

39. IBM competes vigorously with companies that design, manufacture and sell servers and microprocessors.

### IBM's Efforts to Dissuade Mr. Papermaster From Joining Apple

40. On October 20, 2008, in an effort to persuade Mr. Papermaster to remain in the Company's employ, IBM offered Mr. Papermaster a substantial increase in his total compensation package.

41. During that same conversation, in an effort to encourage Mr. Papermaster to comply with the terms of the Noncompetition Agreement, IBM offered to pay Mr. Papermaster one year's salary in exchange for Mr. Papermaster's agreement to respect his contractual obligation to refrain from working for an IBM competitor for one year.

42. On October 20, 2008, in response to IBM's efforts to persuade him to continue his employment with IBM or, at least, to honor his contractual obligations, Mr. Papermaster informed the Company that he needed time to consider the offers IBM had made him.

43. On October 21, 2008, however, Mr. Papermaster submitted his resignation, informed the Company he would depart on October 24, 2008, and indicated that his employment with Apple would begin in November 2008.

### COUNT I — Breach of Noncompetition Agreement

44. IBM repeats and realleges as though fully set forth herein the allegations of Paragraphs 1 through 43 of the Complaint as Paragraph 44 of Count I above.

45. The Noncompetition Agreement is an enforceable agreement that imposes upon Mr. Papermaster certain contractual obligations.

46. Mr. Papermaster intends to and will breach the terms of his Noncompetition Agreement by, among other things, accepting employment with Apple.

47. If Mr. Papermaster is not enjoined from working for Apple, thereby violating his Noncompetition Agreement, IBM will be irreparably injured.

48.     If Mr. Papermaster is not enjoined from violating the nonsolicitation covenants, IBM will be irreparably harmed.

## COUNT II — Misappropriation of Trade Secrets

49.     IBM repeats and realleges as though fully set forth herein the allegations of Paragraphs 1 through 43 of the Complaint as Paragraph 49 of Count II above.

50.     IBM possesses certain trade secrets and confidential information with which Mr. Papermaster is familiar and which Mr. Papermaster has a common law duty not to disclose outside of IBM.

51.     The Noncompetition Agreement is an enforceable agreement that imposes upon Mr. Papermaster certain contractual obligations, including the obligations of nondisclosure with respect to IBM's confidential information.

52.     Mr. Papermaster, as long as he is employed by Apple, will inevitably use and/or disclose IBM trade secrets for his own benefit and for the benefit of Apple.

53.     As an unavoidable result of Mr. Papermaster's impending misappropriation of IBM trade secrets, IBM will be irreparably harmed.

WHEREFORE, plaintiff demands judgment against defendant as follows:

A. Imposing preliminary and permanent injunctive relief ordering Mr. Papermaster to refrain from: (a) breaching the terms of his Noncompetition Agreement with IBM; and (b) engaging in any employment arrangement with Apple in violation of IBM's rights under the Noncompetition Agreement.

B. Awarding IBM's attorneys' fees, costs and disbursements incurred as a result of this action; and

C. Awarding IBM such further relief as the Court deems just and proper.

October 22, 2008

CRAVATH, SWAINE & MOORE LLP

by /s/ Evan R. Chesler
Evan R. Chesler
(EChesler@Cravath.com)
Stephen S. Madsen
(SMadsen@Cravath.com)
Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiff International Business Machines Corporation*