UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

                                    Plaintiff,

                vs.

MARK D. PAPERMASTER,

                                    Defendant.

08 Civ. 9078 (KMK)

**DECLARATION OF
J. RANDALL MACDONALD**

I, J. Randall MacDonald, declare as follows:

1.      I am currently employed by International Business Machines

Corporation ("IBM") as Senior Vice President of Human Resources.

2.      I have been employed by IBM since 2000 and have served in my

present capacity since that time. As Senior Vice President of Human Resources, I am

one of IBM's Senior Executive Officers. I report directly to IBM's Chairman, President

and Chief Executive Officer.

3.      As the Senior Vice President of Human Resources of IBM, I am

responsible for the global human resources practices and policies of the company. I

have responsibility for and access to employment files, which include, among other

things, employees' self-assessments, work histories and compensation records. I also

sign agreements with IBM executives, such as Noncompetition Agreements and

compensation packages, on behalf of IBM.

4.      As part of my employment at IBM, I also serve as a member of the

IBM Integration & Values Team ("I&VT"), formerly known as the Senior Leadership

Team. The I&VT consists of approximately 300 top executives who IBM believes are its key business leaders among its nearly 400,000 employees worldwide. I&VT members are formally appointed by the Chairman of IBM, and the I&VT essentially represents the senior management of the company. Indeed, members of the I&VT include all 20 Senior Executive Officers of IBM, including the CEO and Chairman of the Board. The members of the I&VT are made aware of the most difficult and important strategic and competitive issues facing IBM. For that purpose, the I&VT members are exposed to and work with the most sensitive strategic information the company possesses.

5.      Mark D. Papermaster, whose most recent title is Vice President of Blade Development, has worked at IBM for 26 years, and over the course of his career with IBM has received substantial compensation from IBM, commensurate with the important services he has provided to IBM. I have served on the I&VT with Mr. Papermaster since he became an I&VT member in 2006. Upon his selection to serve on the I&VT, Mr. Papermaster received an increase in his overall compensation package.

6.      I&VT members, including Mr. Papermaster, are exposed to highly confidential information regarding IBM's entire business. The purpose behind such exposure is to (1) develop corporate strategy, (2) drive innovation and growth, (3) address firm-wide issues through collaboration across departments, and (4) allow up-and-coming leaders to gain exposure to all areas of IBM's business. To those ends, I&VT members are not merely given access to highly confidential information, but participate extensively in programs that are designed to expose them to highly confidential aspects of IBM's business with which they would not otherwise be familiar based on their primary job responsibilities, with a view to broadening their

- 2 -

understanding of the company and the most important issues, strategic choices and competitive challenges it faces.

7.    In particular, I&VT members, including Mr. Papermaster, are exposed to highly confidential information related to strategic plans, marketing plans, and long-term business opportunities, including the development status of specific IBM products, as well as extensive confidential assessments of the competitive landscape of the industries in which IBM participates. I&VT members receive such highly confidential information on a regular basis.

8.    For example, an I&VT meeting in January 2008, which was attended by top leaders, including the Chairman and senior vice presidents, included a confidential discussion of IBM's plans and priorities for the coming year, and its product development plans and corporate strategy for the coming two years. Mr. Papermaster participated in that meeting.

9.    The information Mr. Papermaster possesses as a member of the I&VT represents IBM's extraordinary investment in research and innovation and is critical to IBM's competitive success; indeed, IBM has built its entire business around such highly confidential information. Consequently, that information is carefully safeguarded and is not made accessible to the public, to our competitors, or even to most IBM employees. IBM's competitors could not replicate from public sources the information Mr. Papermaster possesses as a member of the I&VT. In my opinion, the confidential information in Mr. Papermaster's possession will be valuable for a very long time, significantly longer than 12 months.

10. Given the highly confidential nature of the information to which I&VT members are exposed, and the fact that members of the I&VT are the senior executives who manage IBM's business and set its strategy, all members of the I&VT are asked to execute a Noncompetition Agreement. Mr. Papermaster executed a Noncompetition Agreement on June 21, 2006 (the "Noncompetition Agreement"), a true and correct copy of which is attached hereto as Exhibit 1. I countersigned that agreement on behalf of IBM.

11. In addition to his participation on the I&VT, Mr. Papermaster has also served on the Technical Leadership Team ("TLT"), which is composed of IBM's top technical leaders and which works to attract, develop and retain the most talented and diverse technical workforce possible. As a member of that team, Mr. Papermaster has gained deep insight into IBM's technical talent "pipeline," technical organizational capabilities, and technical recruitment strategies. These matters are key to IBM's corporate strategy, and IBM considers them highly confidential. The information Mr. Papermaster has gained as a member of the TLT is also carefully safeguarded by IBM and is not made accessible to the public, to our competitors, or even to most IBM employees. IBM's competitors could not replicate from public sources the information Mr. Papermaster possesses as a member of the TLT.

12. In my opinion, and as acknowledged in the 2006 agreement Mr. Papermaster signed, if any of the highly confidential information possessed by Mr. Papermaster were to become available to any of IBM's competitors, IBM would be placed at an extreme competitive disadvantage in the marketplace.

- 4 -

13.    I received notice on the evening of Monday, October 13, 2008, that Mr. Papermaster had expressed an intent to leave IBM and to seek employment with Apple Inc. ("Apple").

14.    I spoke with Mr. Papermaster on Monday, October 20, 2008. During that conversation, Mr. Papermaster informed me that he intended to leave the Company effective Friday, October 24, 2008.

15.    In an effort to dissuade Mr. Papermaster from leaving IBM, I told him that IBM was willing to substantially increase his already significant compensation package.

16.    I also reminded Mr. Papermaster of the Noncompetition Agreement he had signed, and I offered him one year's base salary in exchange for his agreement not to begin employment with Apple or another competitor for a period of one year from his departure from IBM.

17.    Mr. Papermaster responded that he wanted time to consider our conversation. I encouraged him to consider IBM's offers, but explained to him that, in light of his intended departure date, I preferred that he contact me no later than Tuesday, October 21, to communicate his decision.

18.    On Tuesday, October 21, Mr. Papermaster informed IBM that, notwithstanding IBM's offers, he had decided to proceed with his plan to join Apple. During a subsequent conversation, Mr. Papermaster confirmed his resignation and informed me that his last day with the Company would be Friday, October 24.  Mr. Papermaster indicated that he would start with Apple at some point next month.

19. In my opinion, the highly confidential information that Mr. Papermaster has in his possession by virtue of his membership in the I&VT and TLT would be highly valuable to Apple, which competes and is expected to compete with IBM in a number of markets. In my opinion, the departure of Mr. Papermaster will cause significant harm to IBM, both through the loss of the extensive knowledge IBM has paid for him to acquire, and through the competitive advantages that employing Mr. Papermaster would confer upon Apple. Moreover, in the event that other individuals like Mr. Papermaster follow him to Apple, the injury to IBM will be compounded.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: October 22, 2008
Armonk, New York

J. Randall MacDonald